UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN CAPITAL FUNDING,

Plaintiff,

v.

AKF, INC., D/B/A FUNDKITE,

Defendant.

_____/

Case No. 19-cv-13562

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION TO DISMISS COUNT I AND DENYING
DEFENDANT'S MOTION TO DISMISS COUNTS II AND III [#7],
DENYING PLAINTIFF'S MOTION TO DISQUALIFY VARNUM LLP AS
COUNSEL [#9]**

## I. INTRODUCTION

Plaintiff Franklin Capital Funding ("Franklin Capital" or "Franklin") filed the instant action against Defendant AKF ("FundKite") alleging tortious interference with an existing contractual relationship, future business expectancy, and conversion. ECF No. 1, PageID.15-16. Plaintiff filed the instant action against Defendant on November 1, 2019 in the Circuit Court for the County of Oakland, Michigan. *See id*. at PageID.6. Defendant FundKite removed the case to this Court on December 3, 2019. *Id.* at PageID.1.

Presently before the Court is Defendant's Motion to Dismiss, filed on December 17, 2019, and Plaintiff's Motion to Disqualify Varnum LLP as Counsel,

filed on December 18, 2019. ECF Nos. 7, 9. Plaintiff filed its Response to the dismissal motion on January 7, 2020, and Defendant filed its Reply on January 21, 2020. ECF Nos. 12, 14. Defendant filed its Response to the disqualification motion on January 2, 2020, and Plaintiff filed its Reply on January 9, 2020. ECF Nos. 11, 13. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Therefore, the Court will resolve the instant motion on the briefs. *See* E.D. Mich. L.R. § 7.1(f)(2). For the reasons that follow, the Court will **DENY WITHOUT PREJUDICE** Defendant's Motion to Dismiss Count I and **DENY** Defendant's Motion to Dismiss Count II and III [#7] and **DENY** Plaintiff's Motion to Disqualify Varnum LLP as Counsel [#9]. Each Motion is addressed in turn below.

## II. MOTION TO DISMISS

### A. Background

Starting in September 2018, Plaintiff Franklin Capital Funding provided business loans to a third party, Kessman Group Designs & Painting, Inc. ("Kessman"). ECF No. 12, PageID.333. On October 10, 2018, Kessman executed a Continuing Security Agreement that allegedly granted Franklin Capital a security interest in some of its collateral ("Collateral"). ECF No. 7, PageID.140. This relevant property included:

> (a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General

Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights . . . , Software . . . ;

(b) all present and future insurance claims relating to any of the above;

(c) all Goods, Instruments . . . , Documents . . . , policies and certificates of insurance, Deposit Accounts, and money or other property . . . which are now or later in possession of Lender, or as to which Lender now or later controls possession by documents or otherwise; and

(d) all present and future books, records and data of the Debtor relating to any of the above; and

(e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent lease, casualty loss or other disposition of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

ECF No. 1, PageID.95-96.  Plaintiff claims that its security interest in the Collateral was perfected in a UCC-1 financing statement, which was filed on October 10, 2018 in the state of Nevada.  ECF No. 12, PageID.334.

Separately, Kessman sought and received additional funding from Defendant FundKite in October 2018.  *Id.* at PageID.335.  FundKite states that, pursuant to its separate agreement with Kessman, Defendant "was authorized to withdraw a certain amount from Kessman Group's bank account on a daily basis."  ECF No. 7, PageID.141.  However, Franklin asserts that it held the most senior security interest in the relevant assets, and documents such as the UCC-1 financing statement placed

FundKite on constructive notice of its interest.  ECF No. 1, PageID.14.  Further, Plaintiff alleges that "FundKite colluded with Kessman to violate Franklin's rights to its collateral and proceeded to debit Kessman's accounts, thereby taking Franklin's Collateral and damaging Franklin."  ECF No. 12, PageID.335.  These allegations form the basis for Franklin Capital's claims of tortious interference with an existing contractual relationship and future business expectations (Count I), conversion of Franklin Capital's Collateral (Count II), and a request for injunctive and declaratory relief (Count III).

### B. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). While courts are required to accept the factual allegations in a complaint as true, *Twombly,* 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions. *See Iqbal,* 556 U.S. at 678. Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

### C. Tortious Interference with an Existing Contractual Relationship and Future Business Expectations (Count I)

As an initial matter, Defendant notes, and Plaintiff concedes, that Count I contains two distinct claims of tortious interference with (1) a contract, and (2) a business expectation. ECF No. 7, PageID.148; ECF No. 12, PageID.345. It is well-established that "[i]n Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Knight Enterprises v. RPF Oil Co.*, 299 Mich. App.

5

275, 279, 829 N.W.2d 345, 348 (2013) (citing *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89–90, 706 N.W.2d 843 (2005)). The claim must therefore be addressed in two separate analyses.

### 1. Plaintiff Does Not State a Plausible Claim for Tortious Interference of an Existing Contractual Relationship

In order to state a claim for tortious interference with a contractual relationship, Plaintiff must allege the following elements: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit*, 268 Mich. App. at 90, 706 N.W.2d at 849. Claims of tortious interference must "allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Knight Enterprises*, 299 Mich. App. at 280, 829 N.W.2d at 348 (quoting *Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 382, 689 N.W.2d 145 (2004)). It is "an essential element of a claim of tortious interference with a contract that the defendant 'unjustifiably instigated or induced' the party to breach its contract." *Knight Enterprises*, 299 Mich. App. at 280, 829 N.W.2d at 348 (*quoting Derosia v. Austin*, 115 Mich. App. 647, 654, 321 N.W.2d 760 (1982)).

Here, Defendant argues that Plaintiff fails to plead a critical element of this tortious interference claim: that FundKite's conduct was wrongful *per se* or had an unlawful purpose to intentionally interfere with Franklin's contract with Kessman.

A wrongful act *per se* is either "inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises*, 299 Mich. App. at 280, 829 N.W.2d at 348.  At the dismissal stage, Franklin must allege enough facts to establish that FundKite acted wrongfully *per se* or that there were "affirmative acts that corroborate the unlawful purpose of the interference." *Id.* (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 131, 649 N.W.2d 808, 812 (2002)).

In *Knight Enterprises*, the state appellate court found that the plaintiff's claims failed as a matter of law because it could not demonstrate that the defendant instigated the third party's breach of his agreements with the plaintiff or intentionally induced the third party to breach his contracts. *Knight Enterprises*, 299 Mich. App. at 281, 829 N.W.2d at 349.  Instead, the third party solicited the contracts with the defendant, who acted pursuant to its agreements with the third party, not pursuant to an unlawful purpose.  *Id.*

Plaintiff in this case confronts a similar problem; Kessman sought out funding from FundKite to secure additional funding separate from its contract with Franklin Capital.  While Franklin Capital does not have to prove a malicious or unlawful purpose at the dismissal stage, there must still be facts that support the allegation that FundKite "unjustifiably instigated or induced" Kessman to breach its contract with Franklin.  *Knight Enterprises*, 299 Mich. App. at 280, 829 N.W.2d at 348. Plaintiff does not provide any evidence suggesting this type of conduct by FundKite.

The only acts performed by FundKite are the withdrawals of funds from the Kessman Group deposit account, but Franklin does not allege that this was either malicious or unjustified.  Rather, FundKite's actions corresponded to its duties pursuant to its separate agreement with Kessman. Even though Franklin need not demonstrate uncontroverted evidence that FundKite acted wrongfully *per se* at this stage of the litigation, it must still allege these facts and include "more than labels and conclusions . . . ." *Ass'n of Cleveland Fire Fighters,* 502 F.3d at 548.  Because Franklin has not done so here, its allegation for tortious interference of an existing contractual relationship does not support the claim at this time.  Plaintiff will be granted leave to file an amended complaint and address its deficiencies in Count I.

### 2. Plaintiff Does Not Provide Sufficient Facts to State a Valid Claim for Tortious Interference with Future Business Expectations

In order to state a claim for intentional interference with a business expectation, Plaintiff must allege the following elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy by defendant; (3) an intentional interference by defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff.  *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 365-66, 695 N.W.2d 521 (2005).  The third prong, intentional interference, requires that the plaintiff demonstrate with some specificity "affirmative acts by the defendant that corroborate the improper motive of the interference."  *BPS Clinical Labs. v. Blue*

8

*Cross & Blue Shield of Michigan*, 217 Mich. App. 687, 699, 552 N.W.2d 919, 925 (1996) (citing *Feldman v. Green*, 138 Mich. App. 360, 369, 360 N.W.2d 881 (1984)).  Importantly, "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Id.* (citing *Michigan Podiatric Medical Ass'n v. Nat'l Foot Care Program, Inc.*, 175 Mich. App. 723, 736, 438 N.W.2d 349 (1989)).

Defendant argues that Franklin cannot state a claim for tortious interference with future business expectations because Plaintiff has not established that FundKite had knowledge of the relationship between Franklin and Kessman.  ECF No. 7, PageID.152.  The parties disagree whether the existence of the UCC-1 Financing Statement establishes sufficient knowledge of the relationship.  In *Weitting*, however, a Michigan appellate court held that "knowledge of a business relationship will not in itself give rise to a cause of action for tortious interference," so the "interference must be both intentional and improper."  *Weitting v. McFeeters*, 104 Mich. App. 188, 197, 304 N.W.2d 525, 529 (1981).  Rather, Franklin "must allege that the interferer did something illegal, unethical or fraudulent."  *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 324, 788 N.W.2d 679, 696 (2010).

In the instant case, Franklin fails to establish any facts regarding the impropriety of FundKite's actions beyond the mere existence of Defendant's agreement with Kessman.  As Defendant notes, Plaintiff's Complaint "is devoid of

any allegations that withdrawing the funds from the Kessman Group deposit account was illegal, unethical, or fraudulent." *Id.* In response, Plaintiff asserts that whether FundKite had justification for its purported interference is a question of fact for trial. ECF No. 12, PageID.346. However, even accepting Plaintiff's factual allegations as true, Franklin does not establish how FundKite acted intentionally to harm Plaintiff in a manner not "motivated by legitimate business reasons." *Badiee*, 265 Mich. App. 343, 365-66, 695 N.W.2d 521. As with the first half of Count I, Franklin's claim for tortious interference of future business expectations fails to meet the intentional interference requirement to support this Count. Plaintiff must also address this deficiency in an amended complaint if it seeks to maintain this claim.

### D. Conversion (Count II)

Conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992). Defendant argues that Plaintiff cannot state a claim for conversion because Franklin did not establish a perfected security interest and failed to specify the Collateral allegedly converted by FundKite.

First, the parties dispute whether Franklin maintained a properly perfected security interest in the Collateral from Kessman's accounts. While Defendant claims

that Franklin has not met the requirements under MCL § 400.9312 for a security interest in a deposit account, Franklin avers that it has a security interest in all identifiable proceeds of the Collateral and thus MCL § 440.9203 governs instead. Looking to the substance of the Complaint, Plaintiff states that FundKite knowingly converted "Franklin's collateral for its own use when it debited Kessman Group's accounts, which constitute and contain Franklin's collateral, thereby interfering with Franklin's rights as the senior secured creditor."   ECF No. 1, PageID.16-17. Additionally, the language in Franklin's Continuing Security Agreement with Kessman suggests that Franklin held a security interest in Kessman's accounts receivable. *See id.* at PageID.95-96 ("(a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts . . .; (e) all present and future accessions, additions and attachments to, proceeds . . . arising from the sale . . . of any of the above . . ."). These facts support Franklin's assertion that the funds FundKite "withdrew from the deposit account were proceeds of Kessman's accounts receivable."   ECF No. 12, PageID.340.   Taking Plaintiff's allegations as true for the purpose of this Motion, Franklin has sufficiently pleaded a valid security interest in the Collateral to maintain its conversion claim.

Additionally, Defendant argues that any secured creditor must demand possession of its collateral first before bringing a conversion claim against a junior creditor, such as FundKite.  ECF No. 7, PageID.148.  FundKite cites *Stone Computer*

in support of its argument that a plaintiff "cannot maintain an action for conversion until after a demand for return of property is made."  ECF No. 14, PageID.404*; Stone Computer, Inc. v. UAW-Chrysler Nat. Training Ctr.*, No. 286864, 2010 WL 1872922, at \*8 (Mich. Ct. App. May 11, 2010).  While *Stone Computer* does state that the plaintiff had to demand possession for the collateral first, the Michigan Court of Appeals also noted that this demand was satisfied by the filing of a prior lawsuit.  *Stone Computer*, No. 286864, 2010 WL 1872922, at \*8 ("Stone Computer asserted its right to possess the collateral when it sued Union on February 8, 2002 . . . [so] the Training Center could be liable for participating in that conversion.").  But contrary to both parties' arguments, *Stone Computer* does not specify whether the filing of a lawsuit is itself a sufficient demand of possession for a viable conversion claim.

The Michigan Court of Appeals indirectly addressed this issue in another case concerning a stock purchase agreement for abandoned equipment.  *Newberry State Bank v. N. Microsystems, Inc.*, No. 193110, 1998 WL 1991634, at \*2 (Mich. Ct. App. June 2, 1998).  The Court found that while "the conversion did not occur until plaintiff actually demanded possession of the equipment in the agreement, which must be deemed to have occurred only after this lawsuit was filed . . . the fact that plaintiff did not demand possession earlier of the specific equipment listed in the stock purchase agreement does not shield [the defendant] from liability for

12

conversion . . . [i]t merely alters the date that conversion liability attached." *Id.*  The holding in *Newberry* indicates, at the very least, that while the date of FundKite's conversion liability may be implicated, Franklin has still made a demand for possession of the Collateral from FundKite that is sufficient to withstand the dismissal stage.

Accordingly, in viewing Plaintiff's allegations in the most favorable light, the Court finds that Franklin has set forth a viable basis for the conversion claim.  The Court will therefore deny Defendant's Motion to Dismiss Count II.

### E. Injunctive Relief (Count III)

Additionally, Defendant seeks to dismiss Count III because injunctive and declaratory relief is a remedy and not an independent cause of action.  ECF No. 7, PageID.153.  Franklin maintains that "[t]his is a distinction without a difference." ECF No. 12, PageID.347.  Both parties cite to *Thompson* to address their argument, where the Sixth Circuit noted that "[i]njunctive relief is not a cause of action, it is a remedy," and therefore opted to read the plaintiff's complaint as a request for injunctive relief for breach of the relevant statute.  *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014) (internal quotations omitted).

The Court will not dismiss Franklin's claim for injunctive relief, although the request is improperly brought as an independent cause of action, as in *Thompson*, and not under a prayer for relief in the Complaint.  Instead, should Plaintiff choose

to amend, its new Complaint must address this discrepancy and request the remedy in connection with the relevant causes of actions alleged.

### IV. MOTION TO DISQUALIFY COUNSEL

### A. Background

In February 2019, Shanna M. Kaminski ("Kaminski") began working for Varnum LLP ("Varnum"), where her clients included merchant cash advance companies. ECF No. 11, PageID.257. In mid-2019, Avrohom Baum ("Baum") sought out potential representation for Franklin by Varnum and asked to have a meeting. ECF No. 9-1, PageID.166. Kaminski and another Varnum attorney met with Baum at his office on July 31, 2019. ECF No. 11, PageID.258. Prior to the meeting, Kaminski requested the name of Baum's company for the purpose of a conflict check, and both parties agree that Baum provided the name Franklin Capital Management, LLC ("Franklin Management").[1]  *Id*.; ECF No. 9-1, PageID.166. Plaintiff asserts that while he provided the name and executed an engagement letter on behalf of Franklin Management, "he did not understand that the engagement would be limited to one member of the closely-related Franklin entities, nor did Ms. Kaminski explain that distinction." *Id.* at PageID.167.

---

[1] Franklin is comprised of various entities: Franklin Capital Management is involved in the underwriting process, Franklin Capital Group originates the loan, and Franklin Capital Funding is assigned that loan. *See* ECF No. 9-1, PageID.169. Franklin Capital Funding is the named plaintiff in the instant case.

Defendant states that the July 31, 2019 meeting lasted about a half hour.  ECF No. 11, PageID.258.  The parties dispute the extent of the information discussed during the meeting.  Baum asserts that they discussed the Franklin entities' lending structure and reviewed "standard loan documents and term sheets utilized by the Franklin entities, and . . . potential legal issues regarding those documents."  ECF No. 9-1, PageID.175.  Defendant disputes these claims and says no documents, nor any legal issues involving those documents, were reviewed or discussed during the meeting.  ECF No. 11, PageID.259.  Further, Defendant maintains that Baum never informed Kaminski that he considered any of the meeting's subject matter to be confidential, nor did he inform her that there were multiple Franklin entities beyond the Franklin Management name he originally provided.  *Id.* at PageID.258-259.

On the same date of the meeting, Kaminski prepared a Master Retention Agreement between Varnum and Franklin Capital Management.  *See* ECF No. 9-6, PageID.213.  The Agreement, which uses the shorthand "Franklin Capital" to refer to Franklin Capital Management, provides in pertinent part that "Varnum LLP will represent Franklin Capital on any and all matters referred to Varnum LLP by Franklin Capital and expressly accepted by Varnum LLP."  *Id.*  Importantly, the Agreement goes on to state that "[t]his engagement is solely for the purpose of representing you in connection with specific matters to which we agree our

representation should extend." *Id.*   The Agreement also contained a Service and

Billing Memorandum, the first page of which provided:

> The person or entity we represent is the person or entity identified in our
> engagement letter and does not include any affiliates of that person or entity .
> . . In proceeding with this relationship, you agree that our relationship is with
> you and not your affiliates and that, as a result, it will not be necessary for us
> to obtain the consent of you or your affiliates in order for us to represent
> another client in a matter adverse to your affiliates.

*Id.* at PageID.215.

Prior to executing the engagement letter, Baum called Kaminski and

hypothetically asked about whether Varnum would "disclose its confidences and/or

someday appear in an action against one of the Franklin entities" if Varnum were to

represent an adversarial merchant cash advance company.   ECF No. 9-1,

PageID.175.   Kaminski responded in an email:

> If I understood correctly, you asked whether in the unlikely event that one of
> the MCA companies I represent were to "go after" Franklin Capital or wanted
> to "go after" Franklin Capital if I would represent the MCA client or Franklin
> Capital (and vice versa).
> In this situation, I would not be comfortable representing Franklin Capital or
> my MCA client . . . and I would not consider the language in the retention
> letter to cover such a scenario.

ECF No. 9-5, PageID.208.   After this email exchange, Baum executed the

retention letter and returned it to Varnum on August 7, 2019.   ECF No. 11,

PageID.262.   On the same day, Kaminski received an email from Michael Howell,

who she understood to be an employee of Franklin Management.   *Id.*   Kaminski saw

that the email contained a link to certain files, but asserts that she immediately

forwarded the email to her assistant, does not know what was contained in the files, and never reviewed the contents of the files.  ECF No. 11-1, PageID.281.

### B. Standard of Review

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *DeBiasi v. Charter Cty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003).  Attorney disqualification is an extreme sanction, however, and "should only be utilized when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* at 771 (internal citations omitted).  The party seeking disqualification bears the heavy burden of proving the grounds for disqualification of counsel.  *See In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999) (internal citations omitted).

The Michigan Rules of Professional Conduct ("MRPC") govern attorneys' ethical responsibilities in this state and this Court while also providing the basis for disqualification motions.  Plaintiff Franklin Capital relies on MPRC 1.7 and 1.9 to support its present motion.  Rule 1.7, entitled "Conflict of Interest: General Rule" provides as follows:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

17

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

MRPC 1.7. Relatedly, Rule 1.9 addresses conflicts of interests with former clients, and states in relevant part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." MPRC 1.9(a). The Sixth Circuit has provided a three-part test to determine if disqualification is appropriate, which looks at whether: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990).

18

**C. Plaintiff Has Not Met its Heavy Burden to Show Disqualification of Varnum is Warranted on this Matter**

The facts presented here regarding the meeting with Baum and Kaminski, the executed Agreement, and the subsequent email correspondence do not support Plaintiff's argument that disqualification is justified.  Plaintiff fails to meet the first prong of the *Dana* test, which requires the existence of a past or current attorney-client relationship.  *Dana*, 900 F.2d at 889.  The record indicates that, at most, Franklin Capital Management was a prospective client of Varnum.  While the Franklin entities share similar name abbreviations, Baum provided the name "Franklin Capital Management" to Kaminski for the conflict of interest check prior to the meeting.  ECF No. 9-1, PageID.166.  The Master Retention Agreement reflects this as well, which is addressed specifically to Franklin Capital Management.  ECF No. 11-1, PageID.292.  Even if Baum "did not understand that the engagement would be limited to one member of the closely-related Franklin entitles," this misunderstanding is insufficient to demonstrate a violation of the MPRC and warrant disqualification.  ECF No. 9-1, PageID.167.

Further, the language of the letter between Franklin Management and Varnum makes clear that a mutual agreement of the parties must first occur before Varnum would represent Franklin Management in any manner.  *See* ECF No. 11-1, PageID.292 ("This engagement is solely for the purpose of representing you in connection with specific matters to which we agree our representation should

extend."). As Defendant notes, the first page of the addendum to the letter also states that any representation would extend to the entity identified in the engagement letter and not to "any affiliates of that person or entity," such as Plaintiff Franklin Capital Funding. *Id.* at PageID.294. Plaintiff counters by stating it was Baum's belief "that all of the Franklin entities were retaining Varum as counsel to assist with the lending model," but this concern was addressed in the letter's addendum and could have been raised during the meeting by Baum. ECF No. 9-1, PageID.176.

Under these facts, Plaintiff has not demonstrated that a past or current client relationship existed between Franklin Capital Funding and Varnum. As such, the first prong of the *Dana* test is not satisfied and the heavy burden to justify attorney disqualification has not been met. Accordingly, the Court will dismiss Plaintiff's Motion to Disqualify Varnum in the present litigation.

## V. CONCLUSION

For the reasons discussed herein, the Court will **DENY WITHOUT PREJUDICE** Defendant's Motion to Dismiss Count I and **DENY** Defendant's Motion to Dismiss Count II and III [#7] and **DENY** Plaintiff's Motion to Disqualify Varnum LLP as Counsel [#9]. Plaintiff shall be provided with two weeks to amend its Complaint and categorize all claims and prayers for relief in the proper format. Plaintiff's amended Complaint must be filed **no later than July 15, 2020.**

**IT IS SO ORDERED.**


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  July 2, 2020


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 2, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager